1

2

3

4

5

6

7                    **IN THE UNITED STATES DISTRICT COURT**

8              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   BEVERLY ELLIOTT,                        CASE NO. CV-F-05-0753 LJO

11            Plaintiff,                 **MEMORANDUM DECISION AND ORDER**
                                         **ON PLAINTIFF'S APPEAL FROM**
12        vs.                            **ADMINISTRATIVE DECISION** (Doc. 16)

13   JO ANNE BARNART,
     Commissioner of Social Security,
14
              Defendant.
15   _____/

16            Plaintiff Beverly Elliott ("claimant") seeks judicial review of an administrative decision denying

17   her claim for supplemental security income under the Social Security Act, Title XVI ("Act").  Pursuant

18   to 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States

19   Magistrate Judge, and by a December 22, 2005 order, this action was assigned to United States

20   Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's

21   appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

22            Claimant filed her complaint on June 8, 2005 and her opening brief on December 7, 2005. The

23   Commissioner filed her opposition to the appeal on February 7, 2006. Claimant filed a reply brief on

24   February 20, 2006.

25                              **BACKGROUND**

26                         **Administrative Proceedings**

27            Claimant filed an application for Supplemental Security Income under the Social Security Act

28   on February 27, 2001. (Administrative Record "AR" 102-104.) She alleges a disability onset of March

                                         1

1, 2000 due to pain in her back, hips, and knees and numbness in her hands and feet. (AR 90.) Claimant's application for benefits was denied and denied upon reconsideration. (AR 66-70, 72-75.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on April 27, 2004. (AR 27-28.) The Appeals Council denied review. (AR 7-10.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

### Claimant's Background and Work Experience

Claimant was born on May 7, 1964 and has no past relevant work.

### Medical History

The pertinent medical history is summarized as follows.

Plaintiff made three emergency room visits to Memorial Hospital in 1999 and 2000 for abdominal pain. (AR 365-391, 392-405.) On March 5, 2000, a CT scan of the abdomen and pelvis were negative. (AR 383.) In March 2000, claimant had a bowel resection and incidental appendectomy. (AR 291-299, 304.)

A screening intake report on May 8, 2000 at the Stanislaus County Department of Mental Health recorded that claimant denied suicide or homicidal attempts, neglect or abuse. (AR 413-417.) She reported being treated for depression and anxiety for 2 months in 1997. (AR 415.) She reported depression, poor sleep, normal appetite, normal memory. (AR 416.) She was diagnosed with generalized anxiety disorder, dysthymic disorder with a GAF of 70. (AR 416.) She attended group therapy sessions from May to September 2000. (AR 405-412.)

In September 2000, claimant was referred for evaluation of abdominal pain complaints. (AR 442-443.) A barium enema and signmoidoscopy were scheduled which were both unremarkable. (AR 441-444.) An upper GI series showed no evidence suggesting a partial small bowel obstruction. (AR 437.)

On September 5, 2000, Larry Sutter, M.D. performed a psychiatric evaluation. (AR 418-423.) Claimant complained of emotional and medical problems. (AR 418.) Her affect was slightly restricted, speech normal; she denied suicidal or homicidal ideation. (AR 421.) Dr. Sutter diagnosed dysthymic disorder with possible bipolar II disorder and a GAF for 65-70. (AR 422). Dr. Sutter functionally assessed claimant with mild to moderate impairment dealing with coworkers, supervisors, and the public

1   in a work or work-like situation; with mild impairment performing detailed and complex tasks; mild to

2   no impairment of maintaining regular attendance.  (AR 423.)

3       In March 2001, x-rays of claimant's bilateral elbows were negative.  (AR 267.)  In April 2001,

4   examination of her left ankle after a fall showed a small spur, no fracture and swelling.  (AR 266.)

5       On April 26, 2001, claimant presented for a consultative examination before Lakshmi Neena

6   Madireddi, M.D., orthopedist.  (AR 447-448.)  Claimant had full range of motion of the cervical spine,

7   full range of motion of all upper extremity joints, less than full range of motion in the thoralumbosacral

8   spine, and full range in the lower extremity.  No tenderness to palpation, except in the lumbosacral

9   paraspinous muscles.  (AR 447.)  Dr. Madireddi assessed morbid obesity, mechanical lumbar, hip and

10  knee pain, and history of dyspnea and hypothyroidism.  (AR 448.)  Dr. Madireddi functionally assessed

11  claimant as able to stand, walk and sit no more than six hours in a workday, lift and carry 25 pounds

12  occasionally and ten pounds frequently and should avoid repetitive stooping, crouching, crawling, and

13  kneeling.  (AR 448.)

14      On May 10, 2001, state agency physician George Jansen, M.D. completed the Physical Residual

15  Functional Capacity Assessment form.  (AR 449-456.)  He assessed claimant as able to lift and carry 25

16  pounds occasionally and 10 pounds frequently, stand/walk/sit 6 hours in an 8-hour workday.  (AR 450.)

17  He assessed that she should never climb ropes, ladders or scaffolds and is occasionally limited in

18  climbing, balancing, stooping, kneeling crouching and crawling.  (AR 451.)  State agency physician

19  Norman Wheeler, M.D. completed the Physical Residual Functional Capacity Assessment form on June

20  25, 2001.  (AR 458-465.)  He assessed claimant as able to lift and carry 20 pounds occasionally and 10

21  pounds frequently, stand/walk/sit 6 hours in an 8-hour workday.  (AR 459.)  She was assessed as

22  occasionally limited in climbing, balancing, stooping, kneeling, crouching and crawling.  (AR 460.)  She

23  was also limited from working around concentrated exposure to fumes, odors, dusts, gases and poor

24  ventilation.  (AR 462.)

25      In June 2001, Gary Fields, Ph.D. performed a consultative psychological examination of

26  claimant.  (AR 466-469.)  Dr. Fields reviewed psychiatric records from September 2000.  (AR 466.)

27  Dr. Fields conducted an examination and assessed dysthymic disorder.  (AR 468.)  He assessed that

28  claimant is somewhat limited in the ability to deal with the public, supervisors and co-worker but not

1  completely impaired.  She is unimpaired in ability to maintain attention and concentration or simple one
2  and two step tasks and multiple step and higher level cognitive tasks.  (AR 469.)

3       On May 24, 2001, claimant's physician S. Delos Champaign, M.D. opined that claimant has
4  degenerative disc disease which precludes her from working since January 2001.  (AR 457.)  Due to
5  back pain, claimant was limited from lifting or standing.  (AR 457.)

6       On September 6, 2001, claimant was examined and had soft tissue tenderness on the back, elbow
7  and knee joints and crepitus in both knees.  (AR 536.)  She was diagnosed with fibromyalgia.  On
8  September 14, 2001, with complaints of recurring abdominal pain and constipation, claimant was
9  diagnosed most likely with irritable bowel syndrome.  (AR 535.)   In October 2001, claimant was
10  assessed with musculoskeletal pain, hypothyroidism, gastroesophageal reflux and irritable bowel
11  syndrome which was significantly controlled with Fibercon.  (AR 533.)  Fibromyalgia was again
12  assessed in 2002 and depression.  (AR 530, 532.)

13       In January 2003, Mark Sordi, M.D. referred claimant for pain management.  He reported that she
14  carries a questionable diagnosis of lupus but that both Dr. Sordi and Dr. Pando agree that she does not
15  meet the criteria for the disease.  (AR 573.) An MRI on February 5, 2003 of the lumbar and thoracic
16  spine  showed a loss of normal fat signal with the right lateral recessed at L4-L5 and L5-S1.  (AR 567.)
17  There was no evidence of large disc herniation.  (AR 567.)

18       Claimant was seen for pain management February 2003 to June 2003.  She was assessed with
19  chronic generalized pain syndrome.  (AR 558.)  Lab results revealed anti-nuclear Ab lupus, ANA titer
20  positive, and iron deficient.  (AR 537-557.) Claimant tested negative for rheumatoid factor.  (AR 550.)

21       In April 2003, claimant was noted to have hyperthyroidism, irritable bowel syndrome,
22  degenerative joint disease, anxiety, depression, and increased liver enzymes.  (AR 505-511.)  In May
23  2003, an ultrasound of the abdomen showed slightly enlarged liver with increased echogenicity
24  consistent with some degree of fatty infiltration.  (AR 522.)  In June 2003, tests for Hepatitis A was
25  negative, Liver/Kidney tests were negative and Hepatitis C were negative.  (AR 498-499.)  A chart note
26  also in June 2003 indicates claimant had been diagnosed with lupus/fibromyalgia and abnormal liver
27  function in May, indicates negative testing for hepatitis, reports no particular reason for significantly
28  improved liver tests since May, and states claimant was without particular complaints on the exam.  (AR

1   490).

2        A treatment note in October 2003 reports that claimant was diagnosed with fibromyalgia 2 years

3   earlier.  (AR 578.)  In November 2003, a treatment note reported that claimant needs work up with a

4   rheumotologist.  (AR 576.)  She later called the physician's office stating she would not return because

5   her request for Dilauded medication was declined.  (AR 576.)

6        A radiological report on December 15, 2003 of claimant's lumbar spine reported a moderate disc

7   narrowing at L5-S1 which was stable and no other abnormality.  (AR 588.)

8        An MRI of the lumbar spine on January 7, 2004 showed no evidence of disc herniation,

9   protrusion or bony stenosis.  (AR 585.)  The only abnormality was a mild hypertrophic degenerative

10  facet disease at L5-S1.  (AR 585.)  An abdominal ultrasound on January 22, 2004 revealed mild

11  splenomegaly and an enlarged diffusely echogenic liver consistent with hepatic peranchymal disease.

12  (AR 584.)

13                            **Hearing Testimony**

14       David West, M.D., internal medicine, testified that claimant had an autoimmune problem and

15  equivalent to Listing 14.02(B).  (AR 39.)  He testified that from his review claimant does not have

16  fibromyalgia.  (AR 40.)  She has mild osteoarthritis, skin involvement, digestive involvement.  (AR 41-

17  42.)  She has mental dysthymia, but mild and mild depression.  (AR 44-45.)  He testified that four organ

18  systems are involved in her autoimmune problem, but all symptoms are mild.  (AR 46.)

19       Claimant testified that she completed the 12th grade and had a year and a half of vocational

20  training as a secretary.  (AR 51.)  She testified that she is 5'4" and weighs about 272 pounds.  (AR 52.)

21  She testified that she has pain in her lower back through both hips.  (AR53.)  It is sharp pain at times and

22  dull at others.  (AR 53.)  She was having muscle spasms and had a couple of MRIs.  (AR 54.)  Her pain

23  is a 9 out of 10 on bad days, but usually a 5.  (AR 54.)  If she has sun exposure, she gets rashes on her

24  face and hands.  (AR 55.)  She has been treated for depression and anxiety.  (AR 55.)  It started in 2000

25  when her father died and continues.  (AR 55.)  She has low energy, problems with concentration,

26  neglects her personal appearance.  (AR 56.)  She lives with her son and mother.  (AR 56.)  She said she

27  can stand less than a half an hour then her feet, back, hips and knees hurt.  (AR 57.)  She can sit for 20

28  minutes when she will get shooting pains up her back.  (AR 58.)  She has not had treatment for the pain.

1    (AR 61.)  She is tearful several times a day.  (AR 39.)

2    **ALJ Findings**

3        In her April 27, 2004 decision, the ALJ characterized the "primary issue" before her as whether

4    claimant was disabled.  (AR 20.)  In determining claimant was not disabled and not eligible for disability

5    benefits, the ALJ made the following findings (AR 27-28):

6        1.    The claimant has not engaged in substantial gainful activity since the alleged onset of

7    disability.

8        2.    The claimant's auto-immune disorder, obesity, general anxiety disorder, dysthymic

9    disorder, and degenerative disc disease are considered "severe" based on the

10    requirements in the Regulations 20 CFR §416.920(b).

11        3.    These medically determinable impairments do not meet or medically equal one of the

12    listed impairments in Appendix 1, Subpart P, Regulation No. 4.

13        4.    The ALJ finds the claimant's allegations regarding her limitations are not totally credible

14    for the reasons set forth in the body of the decision.

15        5.    The claimant has the residual functional capacity to lift and carry 25 pounds occasionally

16    and 10 pounds frequently, sit for six hours in an eight-hour workday, and stand and/walk

17    for six hours in an eight -hour workday.  The claimant can occasionally climb, balance,

18    stoop, kneel, crouch or crawl.  The claimant is precluded from kneeling.  The claimant

19    is capable of performing simple, repetitive tasks.

20        6.    The claimant has no past relevant work.  20 CFR §416.965.

21        7.    The claimant is a "younger individual."  20 CFR §416.963.

22        8.    The claimant has "more than a high school (or high school equivalent) education."  20

23    CFR §416.964.

24        9.    The claimant has the residual functional capacity to perform substantially all of the full

25    range of light work.  20 CFR §416.967.

26       10.   Based on an exertional capacity for light work, and the claimant's age, education, and

27    work experience, Medical-Vocational Rule 202.20, Appendix 2, Subpart P, Regulations

28    No. 4 would direct a conclusion of "not disabled."

1    11.    The claimant's capacity for light work is substantially intact and has not been

2           significantly compromised by any nonexertional limitations.  Accordingly, using the

3           above-cited rule as a framework for decision-making, the claimant is not disabled.

4    12.    The claimant was not under a "disability," as defined in the Social Security Act, at any

5           time through the date of this decision.  20 CFR §416.920(f).

6                                              **DISCUSSION**

7                                           **Standard of Review**

8           Congress has provided a limited scope of judicial review of a Commissioner's decision.  *See* 42

9    U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the

10   determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*,

11   760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510

12   (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating

13   physician's findings).  Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402

14   U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119,

15   n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as

16   adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.

17          The record as a whole must be considered, weighing both the evidence that supports and detracts

18   from the Commissioner's conclusion.  *Jones,* 760 F.2d at 995.  If there is substantial evidence to support

19   the administrative findings, or if there is conflicting evidence that will support a finding of either

20   disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d

21   1226, 1229-1230 (9th Cir. 1987).

22          Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to

23   determine whether it is:  (1) based on proper legal standards; and (2) supported by substantial evidence

24   in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

25          Claimant contends the ALJ's erred as follows: (1) improperly rejecting her testimony, (2) failed

26   to properly assess her impairments, (3) rejected her treating physician's opinion, (4) improperly

27   determined her residual functional capacity, (5) rejected lay witness testimony, and (6) erred at step 5

28   of the sequential evaluation.

### The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled.  20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further.  20 C.F.R. §§ 404.1520(a) and 416.920(a).  The five-step process is summarized as follows:

1.　Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2.　If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3.　If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

4.　If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5.　If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful

---

[1]　　*See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2]　　If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985.

[3]　　At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity.  *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

1    work that exist in the national economy;[4] if the claimant can, the claimant is not disabled

2    and the analysis ends.

3    The claimant has the initial burden of proving the existence of a disability within the meaning

4    of the Act.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  The claimant establishes a prima

5    facie case of disability by showing that a physical or mental impairment prevents him from engaging in

6    his previous occupation.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§

7    404.1520(f) and 416.920(f).

8    In this case, claimant convinced the ALJ that she met the criteria in step one of the sequential

9    analysis; that she has not been engaged in substantial gainful employment.

10    At step two, the ALJ must determine if the impairment is severe.  The ALJ determined that the

11    medical evidence establishes severe impairments of auto-immune disorder, obesity, generalized anxiety

12    disorder, dysthymic disorder, and degenerative disc disease.

13    At step three, the ALJ found that no impairment met or equaled the Listings.

14    **Listing of Impairments 14.02**

15    Claimant argues that the ALJ erred by failing to find that claimant's systemic lupus

16    erythematosus meets or equals medical Listing of Impairments 14.02 (B).

17    The purpose of the Listings is to describe impairments "severe enough to prevent a person from

18    doing any gainful activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885 (quoting Social

19    Security Ruling (SSR) 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983)).  If a

20    claimant meets or equals a listed impairment, he/she is disabled.  *Tackett v. Apfel*, 180 F.3d 1094, 1099

21    (9th Cir. 1999).  To "meet" a listed impairment, a claimant must establish that he or she meets each

22    characteristic of a listed impairment relevant to his/her claim.  *Tackett*, 180 F.3d at 1099.  To "equal"

23    a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in

24    severity and duration to the characteristics of a relevant listed impairment.  *Tackett*, 180 F.3d at 1099.

25    Medical equivalence must be based on medical findings in the evidence supported by medically

26    acceptable clinical and laboratory diagnostic techniques.  *Tackett*, 180 F.3d at 1100; 20 C.F.R. §§

27

28    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[4]    At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

1  404.1526(b) and 416.926(b).

2      A plaintiff's impairment is not considered to be one in the Listing of Impairments merely because

3  it has the diagnosis of a listed impairment; it must also have the findings shown in the listed impairment.

4  20 C.F.R. §§404.1525(d), 416.925(d).  A plaintiff's impairments meet a listed impairment only if the

5  claimant's impairments manifest the specific findings described in the set of medical criteria for the

6  listed impairment.  *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885 (1990).

7      Listing 14.02 deals with systemic lupus erythematosus.  Here, the ALJ retained Dr. West as a

8  medical advisor to provide testimony on claimant's medical history and to opine whether she met the

9  Listings for lupus.  Dr. West opined that claimant does not have lupus.  The ALJ accurately summarized

10  Dr. West's testimony:

11          "David A. West, M.D., the medical expert who testified in this case,
           reviewed the record and testified that the claimant has an auto-immune
12          disorder that is not SLE or fibromyalgia.  I accept the testimony of Dr.
           West regarding this matter, as he was able to examine the claimant's
13          entire medical file."  (AR 24.)

14  Dr. West, who had the benefit of the entire medical file, concluded that claimant did not have lupus, but

15  an autoimmune disorder.  In his testimony, he carefully considered all of the symptoms pertaining to

16  Listing 14.02 and concluded that she did not meet the Listing.  (AR 41-43.)  He opined that while

17  multiple body systems were involved in the disease, all such involvement was mild.  (AR 41-43.)  This

18  evidence is substantial evidence to support the ALJ's finding that claimant does not meet the Listings.

19  The "[o]pinions of a nonexamining, testifying medical advisor may serve as substantial evidence when

20  they are supported by other evidence in the record and are consistent with it." *Morgan v. Comm'r of Soc.*

21  *Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir.1999) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th

22  Cir.1995)).

23                    **Claimant's Subjective Complaints**

24      Claimant argues that the ALJ failed to offer clear and convincing reasons to reject her subjective

25  pain testimony.

26      A claimant's credibility generally becomes important at the stage where the ALJ is assessing

27  residual functional capacity, because the claimant's subjective pain statements may tell of greater

28  limitations than can medical evidence alone. Social Security Rule (SSR) 96-7p (1996); *Tonapetyan v.*

                                        10

*Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding his limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). In assessing the claimant's credibility, the ALJ may use "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony. *Tonapetyan v. Halter*, 242 F.3d at 1148. The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements. *Fair v. Bowen*, 885 F.2d at 602; *Tonapetyan v. Halter*, 242 F.3d at 1148. An ALJ may consider the following factors to determine the credibility of a claimant's allegations:

(1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)     Treatment, other than medication, for relief of pain;

(5)     Functional restrictions;

(6)     Claimant's daily activities;

(7)     Unexplained, or inadequately explained, failure to seek treatment or follow up a prescribed course of treatment; and

(8)     Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); 20 C.F.R. §1529.

In rejecting claimant's subjective complaints, the ALJ made specific findings. The ALJ exhaustively compared the objective medical evidence to claimant's claimed limitations, both physical and mental.

> "I have also considered the claimant's subjective complaints in making my determinations. However, I cannot find greater limits or total disability based on the claimant's subjective complaints because they are not fully credible. The claimant's subjective complaints and alleged limitations are out of proportion to the objective findings as noted above. There is no disuse [sic] muscle atrophy that would be compatible with the level of inactivity alleged by the claimant at the hearing, namely that she has been sleeping 18 hours a day for the last 1-1/2 years, or by her mother and sister." (AR 25) (evidence citations omitted.)

The ALJ further noted the objective evidence:

11

1

2

3

> "There is also no evidence of radiculopathy, neurological deficits or other objective abnormalities to support her testimony that she can stand only 30 minutes because of lower extremity and low back pain. Her testimony of disabling depression and memory problems is not supported by the mental status examinations." (AR 25.)

4   While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated

5   by objective medical evidence, the medical evidence is still a relevant factor in determining the severity

6   of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

7        The ALJ also compared the treatment claimant had been receiving to the alleged severity of the

8   pain/disability:

9

10

11

12

> "The claimant's subjective complaints and alleged limitations are not consistent with the treatment she receives. The claimant has routine office visits for her physicial complaints. There is also no evidence of use of a TENS unit, home exercises, etc. the would be consistent with disabling back pain. She has not requested, and her treating doctors have not referred her to a mental health professional for work-up and treatment." (AR 25-26.)

13   The ALJ also cited to the testimony of the medical expert and relied upon claimant's drug seeking

14   behavior:

15

16

17

18

> "The medical expert testified that the claimant is addicted to Dilaudid, but it is not causative of any of other alleged problems. She called her doctor in November 2003 and stated that she probably would not be going to the office anymore after being denied Dilauded. I infer drug seeking behavior, which would indicate a tendency to exaggerate symptoms in order to obtain medication." (AR 26.)

19   Claimant argues that the ALJ erred in inferring drug seeking behavior, in that she is in pain and would

20   "naturally" seek drugs to reduce the pain.

21        The ALJ's conclusion from the evidence is a logical inference. The ALJ is entitled to draw

22   inferences logically flowing from the evidence in the proceedings before him. *See Macri v. Chater*, 93

23   F.3d 540, 543-44 (9th Cir. 1996). The fact that the ALJ believed one logical inference from the evidence

24   and not claimant's stated reason is not error. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)

25   (ALJ may consider statement that claimant left work due to being laid off and not because of

26   impairment.) Where the evidence is susceptible to more than one rational interpretation, the court may

27   not substitute its judgment for that of the commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.

28   1999). A logical inference from the evidence is that claimant was addicted to her medication and was

drug-seeking to satisfy her addiction.  A claimant's misuse of medications is a valid factor in an ALJ's

credibility determinations. See e.g., *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir.1995) (observing

that claimant's "drug-seeking behavior further discredits her allegations of disabling pain").

The ALJ also noted inconsistent testimony, in particular as it related to her weight:

> "The credibility of the claimant's subjective allegations is questionable
> because of her inconsistent statement regarding her weight.  She told Dr.
> Ringer on September 15, 2000, that she lost 20 pounds, since May 2000.
> Her weight at that time was 260 pounds.   However, her weight on
> February 2000, was 262 pounds.  She testified that she had gained 23-30
> pounds since February 2001.  Her weight on April 26, 2001 was 268
> pounds.  Her weight on November 17, 2003 was 272 pounds." (AR 26.)

Claimant argues that the ALJ erred by improperly discrediting her subjective complaints based on this

reason.  It is the ALJ who is entrusted by law with the responsibility to evaluate both the medical

evidence and the claimant's credibility. *See, e.g.*, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

1195 (9th Cir.2004).  The ALJ may properly consider apparent inconsistencies in testimony.

The ALJ summarized his findings on credibility as follows:

> "The inconsistencies between the claimant's testimony and mental
> examinations, the limited objective findings, Dr. Adam's opinion, and,
> most important, the findings of exaggeration and drug seeking behavior,
> far outweigh any other 'factors' noted in Social Security Ruling 96-7p."
> (AR 26.)

If there is conflicting evidence that will support a finding of either disability or nondisability, the finding

of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Contrary to claimant's claims, the ALJ comprehensively and correctly evaluated claimant's

complaints.  The ALJ made specific findings as to the lack of credibility of claimant's purported

complaints. "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604

(9th Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).  Thus, there is substantial evidence

in the record to support  ALJ's rejection of claimant's subjective complaints.

**Fibromyalgia**

Plaintiff appears to complain that the ALJ erred in failing to adopt other diagnoses of

fibromyalgia.

Fibromyalgia, also called fibrositis, is a disease involving muscle and musculoskeletal pain.

*Preston v. Secretary of Health and Human Servs.*, 854 F.2d 815, 817 (6th Cir.1988)).  Fibromyalgia is

a "type of muscular or soft-tissue rheumatism that affects principally muscles and their attachment to bones, but which is also commonly accompanied by fatigue, sleep disturbances, lack of concentration, changes in mood or thinking, anxiety and depression." *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.,* 125 F.3d 794, 796 (9th Cir.1997) (citing *Fibromyalgia,* Arthritis Foundation Pamphlet at 1, 5 (1992)). Fibromyalgia has been said to constitute a diagnosis by limitation. *See Preston v. Sec'y of Health & Human Servs.*, 854 F.2d at 817-18 ("As set forth in the two medical journal articles ... fibrositis causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances.... [I]t is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis patients."). The only symptoms that discriminates between fibromyalgia and other diseases of a rheumatic character is multiple tenders spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir.1996). The principal symptoms of fibromyalgia "are 'pain all over,' fatigue, disturbed sleep, stiffness, and 'the only symptom that discriminates between it and other diseases of a rheumatic character' multiple tender spots, more precisely 18 fixed locations on the body and the patient must have at least 11 of them to be diagnosed as having fibromyalgia, that when pressed firmly cause the patient to flinch." *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001), citing *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir.1996). Specialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community. *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004).

The ALJ reviewed all of the objective medical evidence and found that none of the other diagnoses of fibromyalgia warranted severity findings:

> "The claimant has been diagnosed with fibromyalgia and her treating doctors have attributed her joint pains to fibromyalgia. However, the only areas of tenderness to palpation found by Dr. Campaign were in the lumbosacral muscles and both knees, which do not support fibromyalgia. None of the treating doctors identified the specific fibromyalgia tender points." (AR 23.)

The ALJ noted that "Rheumatoid factor was also negative." (AR 23.) The ALJ followed the controlling case authority on the diagnosis of fibromyalgia.

### The ALJ's Finding of Residual Functional Capacity

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382(a)(3)(A).

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546.  "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments.  20 C.F.R. §§ 404.1545(a) and 416.945(a).  Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work.  20 C.F.R. §§ 404.1567 and 416.967.  In this case, the ALJ found that plaintiff had the residual functional capacity to perform light work, with postural restrictions.

Under the applicable regulations, "light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b).  Social Security Ruling 83-10 further defines this term by stating that " . . . the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  Ruling 83-10 further explains that "[s]itting may occur intermittently during the remaining time."

Here, the ALJ found that the claimant has the residual functional capacity to lift and carry 25 pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour workday, and stand and/walk for six hours in an eight -hour workday.  The claimant can occasionally climb, balance, stoop, kneel, crouch or crawl.  The claimant is precluded from kneeling.  The claimant is capable of performing simple, repetitive tasks.

Claimant argues that the ALJ erred in rejecting the opinion of her treating doctor, Dr. Champaign, of permanent inability to work.

Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The Ninth

Circuit has held that a treating physician's opinion is generally to be afforded great weight in disability cases because he or she ". . . is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. §§ 404.1527(d) and 416.927(d). However, a treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (inconsistencies and ambiguities in treating physician's opinion concerning level of disability sustained by social security claimant, were specific and legitimate reasons for not accepting physician's opinion.)

The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the treating physician's opinion:

> "The ALJ may disregard the treating physician's opinion, but only by setting forth "specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Id.* Furthermore, the ALJ's reasons for rejecting the doctor's opinion must be "clear and convincing."

*Rodriquez,* 876 F.2d at 762 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. §416.928. Claimant bears the burden of proving that he is disabled by presentation of "complete and detailed objective medical reports of h[is] condition from [a] licensed medical professional." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. 404.1512(a)-(b), 404.1513(d)).

The ALJ gave a detailed summary of the facts and conflicting clinical evidence. (AR 15-17.) The ALJ reviewed all of the objective medical evidence in the record, including X-rays, MRIs, treatment notes, consultative examinations and reviewing doctor evaluations.

The ALJ did not accept the opinion of Dr. Champaign who opined that claimant cannot perform even sedentary work. The ALJ noted the opinion:

> "Dr. S. Champaign completed a 1 page form for cash aid and work assignment dated May 24, 2001, and stated the claimant is permanently unable to perform full-time or part-time work due to degenerative disc

1   disease of L5-S1 and T12-L1." (AR 23) (evidence citations omitted.)

2   The ALJ did not accept the opinion because "it is inconsistent with the objective findings." (AR 23.)

3   The ALJ then turned to the specific objective findings to which Dr. Champaign's opinion was

4   inconsistent and compared and contrasted the opinion with the objective evidence:

5   "The only diagnosis listed by Dr. Champaign is degenerative disc disease of the lumbar and thoracic spine, and he attributes her inability to work

6   to back pain. However, the MRIs of the lumbar spine did not reveal any significant abnormalities. There is no evidence of disc herniation,

7   stenosis or nerve root involvements. The thoracic spine MRI also showed no significant abnormalities. The examinations showed limited

8   range of motion of the lumbar spine, but the claimant does not require an assistive device for ambulation. There is also no evidence of use of a

9   TENS unit, home exercises, etc, that would be consistent with disabling pain." (AR 23) (evidence citations omitted.)

10

11   The ALJ compared Dr. Champaign's opinion with that of the objective medical evidence. The ALJ

12   found the objective evidence did not support the level of disability opined by Dr. Champaign. A treating

13   physician's opinion is granted controlling weight only if it is well supported by medically acceptable

14   clinical and laboratory diagnostic technique and not inconsistent with the other substantial evidence in

15   the record. 20 CFR §404.1527 (d)(2) and 416.927(d)(2).

16   The ALJ also partially rejected Dr. Champaign's opinion because "his conclusion of disability

17   is also reserved to the Commissioner of Social Security." The ALJ rejected Dr. Champaign's finding

18   that claimant is "permanently disabled" as an opinion reserved to the Commissioner and because the

19   criteria by which Dr. Champaign assessed permanent disability was not set forth. (AR 23.) "[T]he

20   opinion of the treating physician is not necessarily conclusive as to either the physical condition or the

21   ultimate issue of disability.' *Morgan v. Comm'r of the Social Sec. Admin.,* 169 F.3d 595, 600 (9th

22   Cir.1999). The ALJ set forth specific and legitimate reasons to reject Dr. Champaign's assessment in

23   full and provided a comprehensive, detailed summary of the facts and conflicting clinical evidence. See

24   20 C.F.R. § 404.1527(e)(1) and 416.927(e)(1) (opinions on issues reserved for the Commissioner).

25   Claimant also argues that the ALJ erred in rejecting the opinion of Scott Bradley. Scott Bradley

26   opined that claimant was permanently disabled. (AR 154.)

27   The ALJ rejected this opinion for the same reasons as she rejected the opinion of Dr. Champaign.

28   The ALJ rejected the opinion for the additional reason that she could not tell who Scott Bradley was.

"I do not know who this person or whether he is a doctor. I cannot accept an opinion of disability based on 'pain' without any medically determinable impairments listed." (AR 23.)

The Social Security Regulations list persons who qualify as "acceptable medical sources" and include persons with doctorate degrees or M.D. degrees. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (listing acceptable medical sources); *see Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.) (noting that "[a]cceptable medical sources specifically include licensed physicians. . ."), *cert. denied*, 519 U.S. 881, 117 S.Ct. 209, 136 L.Ed.2d 144 (1996). Since claimant did not show that Scott Bradley was an acceptable medical source, the ALJ was not bound to consider his opinion.

### Lay Witness Testimony

Claimant argues that the ALJ erred in inadequately addressing lay witness statements of claimant's mother, friend and sister.

The ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony he rejects. *Smolen v. Chater*, 80 F.3d 1273, 1288, 1292 (9ᵗʰ Cir. 1996) (finding the ALJ's reasons for rejecting lay testimony insufficient and thus crediting the testimony). Lay witness testimony is "qualified evidence" that the ALJ must consider. *See Sprague v. Bowen,* 812 F.2d 1226, 1231-32 (9th Cir.1987).

The ALJ rejected the mother's and sister's statements, in part, because the objective evidence did not support the level of inactivity claimed. Claimant said she slept for 18 hours per day, yet there was no muscle atrophy. (AR 25.)

The finding of disability must be based upon objective medical evidence and not upon lay witness testimony. See e.g., SSR 83-20 ("impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record.") The ALJ stated that the lay witnesses' testimony was contradicted by the medical evidence. Lack of support in the medical evidence is a recognized basis to reject lay evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

The ALJ further noted that claimant's lack of credibility as to the severity of her problems negatively impacted all third party reports. (AR 26.) Lay witness Anita Edwards reported to see claimant in constant pain, although claimant "hardly complain[s]." (AR 157.) For the most part, these

observations depended on claimant's reports of her own pain, and thus, was properly rejected based on a negative credibility finding.

## Medication Side Effects

Claimant argues that the ALJ failed to properly consider the side effects of claimant's medication.  She points to various medications she was taking and noted that she reported her medications had various side effects including drowsiness, mental clouding, lethargy, dizziness, among other things.  (Opening Brief p.31.)

Contemporaneous medical records reveal no indication that claimant's medication caused drowsiness or any other side effect.  Claimant cites to her own subjective reports in application forms and questionnaires that she experiences side effects from her medications.  (Opening brief p.31.)  *See Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir.1985) (requiring clinical evidence to support claims of impairing side effects from medication).  In addition, claimant's complaints of disabling side effects are contradicted by her daily activities, which included driving a car and taking care of her son.  (AR 57, 59.)  Thus, the Record fails to support the claim of medication side effects.  The Court finds no error.

## Consideration of Obesity

Claimant argues that the ALJ failed to account for claimant's obesity in determining claimant's residual functional capacity.  (Opening brief p.32.)

An ALJ must consider obesity in determinations of disability.  *Hammock v. Bowen*, 879 F.2d 498, 503-504 (9th Cir.1989) (en banc).  See also Social Security Ruling 02-01P (discussing the evaluation of obesity in disability claims), superceding Social Security Ruling (No. 00-3p).  SSR 02-01P states, that as the initial step in the sequential evaluation process, "when establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build."  (SSR 02-01P, para. 4.)

While the SSR states that the Social Security Administration will evaluate effects of obesity, it remains claimant's burden to show that obesity has some effect on her functional capacity.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.)  Claimant must come forward with

some evidence of how her obesity limits her functioning. *Burch v. Barnhart*, 400 F.3d at 683 ("Even on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis.")

The ALJ found that claimant's obesity was "severe." (AR 27, Finding no. 2.) The ALJ relied upon the orthopedic consultative examination of Dr. Madireddi, M.D. (AR 447-448.) In Dr. Madireddi's examination, claimant had full range of motion of the cervical spine, full range of motion of all upper extremity joints, less than full range of motion in the thoralumbosacral spine, and full range in the lower extremity. No tenderness to palpation, except in the lumbosacral paraspinous muscles. (AR 447.) Dr. Madireddi assessed morbid obesity, mechanical lumbar, hip and knee pain, and history of dyspnea and hypothyroidism. (AR 448.) Dr. Madireddi functionally assessed claimant as able to stand, walk and sit nor more than six hours in a workday, lift and carry 25 pounds occasionally and ten pounds frequently and should avoid repetitive stooping, crouching, crawling, and kneeling. (AR 448.) Two state agency physician basically agreed with Dr. Madireddi. (AR 449-456; 458-465.)

Thus, by relying upon the consultative examiner, the ALJ considered the severity of claimant's obesity in his functional assessment of claimant's residual capabilities. Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding examining physician's opinion that claimant could lift and carry 20 to 50 pounds constituted "substantial evidence" in support of ALJ's finding that claimant could perform medium work, where examining physician's opinion was based on results of "his own independent examination") See Social Security Ruling 02-01P ("[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.") Thus, there is substantial evidence in the Record to support the ALJ's residual functional assessment in light of her obesity.

## **Reliance on the Grids**

Claimant argues that there is not substantial evidence to support the ALJ's relying on the grids

1   for the vocational finding. Claimant argues the ALJ's finding of her mental capabilities precludes

2   application of the grids.  The Commissioner argues that the ALJ properly relied upon the grids at step

3   5.

4        In 1978, the Secretary of Health and Human Resources promulgated the Medical-Vocational

5   Guidelines (also known as "grids") to improve the efficiency and uniformity of Social Security benefits

6   determination.  *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir.

7   1988).  The grids take account of various vocational factors, such as age, education and work experience,

8   and the claimant's residual functional capacity.  20 C.F.R. Pt. 404, Subpt. P, App. 2 (1985).

9        The grids relieve the SSA of the need to rely on vocational expert testimony in cases where the

10  underlying findings of fact correspond precisely to the criteria of a specific rule in the guidelines.

11  *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952 (1983).   Where a claimant's qualifications

12  correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether

13  work exists that the claimant could perform.  *Id.*  If the Medical-Vocational Guidelines fail to accurately

14  describe a claimant's limitations, an ALJ may not rely on the Medical-Vocational Guidelines alone to

15  show the availability of jobs for the claimant and must hear testimony of a vocational expert. *Reddick*

16  *v. Charter*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the grids in lieu of taking testimony

17  of a vocational expert only when the grids accurately and completely describe the claimant's abilities and

18  limitations.  *Id.*  Where both exertional and non-exertional impairments are present, the grids are

19  inapplicable only if the non-exertional impairments are significant. *See Cooper v. Sullivan*, 880 F.2d

20  1152, 1155 (9th Cir. 1989).

21       The determination of whether mental abilities significantly restrict a claimant's ability to perform

22  unskilled work requires an examination of the demands of such work. Unskilled work is defined as work

23  which "needs little or no judgment to do simple duties that can be learned on the job in a short period

24  of time. The job may or may not require considerable strength. [L]ittle specific vocational preparation

25  and judgment are needed." 20 C.F.R. § 404.1568(a). In addition, "the primary work functions in the bulk

26  of unskilled work relate to working with things (rather than with data or people)...." 20 C.F.R. Pt. 404,

27  Subpt. P, App. 2, § 200.00(I)

28       Claimant argues that "Medical-Vocational Guideline do not contemplate limitations regarding

1   concentration, persistence and pace, and regarding social functioning." (Opening brief p. 35.17-20.)

2   Where a claimant has a nonexertional impairment in addition to an exertional limit, the grids may

3   not accurately reflect the availability of jobs such a claimant could perform. *Ortiz v. Secretary of Health*

4   *and Human Res.,* 890 F.2d 520, 524 (1st Cir. 1989); *Gagnon* v. *Secretary of Health and Human*

5   *Services,* 666 F.2d 662, 665 n.6 (1st Cir. 1981). Examples of non-exertional limitations are mental,

6   sensory, postural, manipulative, or environmental (e.g. inability to tolerate dust or fumes) limitations.

7   *Desrosiers.* 846 F.2d at 579. "Non-exertional limitations" are those which affect an applicant's ability

8   to meet job demands other than strength demands, such as anxiety, depression, inability to concentrate,

9   inability to understand, inability to remember, inability to tolerate dust or fumes, as well as manipulative

10  or postural limitations, such as the inability to reach, handle, stoop, climb, crawl, or crouch. 20 C.F.R.

11  416.969a. The decision to rely on the grid in this situation depends upon whether claimant's mental

12  impairment "significantly affects [her] ability to perform the full range of jobs." *See Lugo* v. *Secretary*

13  *of Health and Human Services,* 794 F.2d 14, 17 (1st Cir. 1986) (per curiam).

14  Here, the ALJ essentially determined that claimant's mental condition was not severe and thus,

15  did not impinge on claimant's ability to engage in the full range of light, unskilled work. There are two

16  distinct sets of mental capabilities which are required for the performance of unskilled work. Social

17  Security Ruling (SSR) 85-15. These are (1) the intellectual ability to perform such work and (2) the

18  ability to cope with the demands of the work environment per se.

19  For the first category-the ability to carry out simple instructions, respond to supervision and cope

20  with coworkers, there is sufficient evidence to support the ALJ's conclusion that claimant's may perform

21  simple, repetitive tasks. On September 5, 2000, Larry Sutter, M.D. performed a psychiatric evaluation

22  in which he diagnosed dysthymic disorder with possible bipolar II disorder and a GAF for 65-70.[5] (AR

23  422). Dr. Sutter functionally assessed claimant with mild to moderate impairment dealing with

24  coworkers, supervisors, and the public in a work or work-like situation; with mild impairment

25  performing detailed and complex tasks; mild to no impairment of maintaining regular attendance. (AR

26

27  [5] A GAF in the range of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functions (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *American Psychiatric Assn. Diagnostic and Statistical Manual of Mental Disorders*, p. 32 (4th ed. 1994).

28

1   423.)  In another examination, Gary Fields, Ph.D. performed a consultative psychological examination

2   of claimant in which he assessed that she is somewhat limited in the ability to deal with the public,

3   supervisors and co-worker but not completely impaired.  She is unimpaired in ability to maintain

4   attention and concentration or simple one and two step tasks and multiple step and higher level cognitive

5   tasks.  (AR 469.)

6          The second category includes the ability to remain in the workplace the entire day and to attend

7   work regularly and punctually. In this area, claimant was rated with, at most, a mild impairment in

8   maintaining regular attendance at work and mild to moderate impairment with dealing with co-workers,

9   supervisors, and the public by Dr. Sutter. (AR 422-423.) Dr. Fields opined that claimant was somewhat

10  limited but not completely impaired in her ability to deal with the public, supervisors and co-workers.

11  (AR 469.)

12         Based on the evidence, the ALJ found claimant has the residual functional capacity to perform

13  physical exertional and nonexertional requirements of work up to light work.  The ALJ found, despite

14  moderate difficulties in maintaining concentration, persistence or pace, claimant capable of performing

15  simple, repetitive tasks.  (AR 25.)  Claimant was assessed with intellectual ability to perform the work

16  and the ability to cope with the demands of work.  Application of the Grids was not found to be in error

17  where a claimant's concentration was "moderately" limited.  *Eleutice v. Commissioner of Social*

18  *Security*, 275 F.Supp.2d 172, 176 (D.Puerto Rico 2003) (Arroyo's symptoms on the PRTF were never

19  assessed to be worse than "moderate" or "often", and the commentary in the PRTF also noted that

20  Arroyo was able to perform two-step tasks and maintain a constant concentration level for two-hour

21  periods.)

22         The ALJ found that claimant had no past relevant work and thus had not gained relevant skills.

23  (AR 26.)  The ALJ found that claimant was not disabled based on the rule 202.20 of Table 3 in

24  Appendix 2 of Subpart P, Regulations No. 4.  The occupations in Part 404, Subpart P, Appendix 2, Table

25  3, 202.20, are unskilled occupations.

26         "Unskilled work is work which needs little or no judgment to do simple
       duties that can be learned on the job in a short period of time. The job

27     may or may not require considerable strength. For example, we consider
       jobs unskilled if the primary work duties are handling, feeding and

28     offbearing (that is, placing or removing materials from machines which

are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. §416.968(a).

Unskilled work requires no skills at all and involves only simple duties. Thus, the inability to perform complex job tasks is already contemplated by the Grid Rules. Since the ALJ used these Grid Rules, she was not required to obtain the testimony of a vocational expert. See SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.").

Thus, unskilled work is defined as simple tasks, which Claimant was found capable of performing. Therefore, plaintiff's limitations to simple and routine work would not prevent her from performing unskilled occupations as stated in the grids.

## CONCLUSION

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Beverly Elliott.

IT IS SO ORDERED.

**Dated:    June 12, 2006**                    **/s/ Lawrence J. O'Neill**
b9ed48                                       UNITED STATES MAGISTRATE JUDGE